**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Lauren Courtney Luque,<br><br>Petitioner,<br><br>v.<br><br>Federal Bureau of Prison, and Federal Correctional Institution Waseca,<br><br>Respondents. | Case No. 23-cv-3893 (NEB/DLM)<br><br><br>**REPORT AND RECOMMENDATION AND ORDER** |

Petitioner Lauren Courtney Luque has filed a petition for a writ of habeas corpus challenging how the Bureau of Prisons ("BOP") is applying First Step Act ("FSA") time credits towards her sentence. (Doc. 1.)

Ms. Luque did not pay the filing fee or submit an *in forma pauperis* ("IFP") application along with her petition. Accordingly, the Clerk directed her to either pay the filing fee or submit an IFP application within fifteen days of the Clerk's letter, or by January 11, 2024, or her case would be subject to dismissal. (Doc. 2.) When that deadline passed with no response from Ms. Luque, this Court initially recommended that this matter be dismissed for failure to prosecute. (Doc. 4.) The Clerk's letter was then returned to sender, and then re-sent with the correct spelling of Ms. Luque's last name. Ms. Luque has since paid the filing fee and this Court issued an order vacating the recommendation for dismissal. (Docs. 7, 8.) Ms. Luque's petition is now before the Court for initial review under Rule 4 of The Rules Governing Section 2254 Cases in the United States District

1

Courts.[1] Upon that review, this Court recommends that Ms. Luque's claims requesting that the BOP calculate her FSA time credits starting from May 24, 2023, and her claim requesting immediate transfer to residential re-entry center ("RRC") be dismissed. The Court orders the Respondents to Answer Ms. Luque's remaining claim that she is eligible for sooner release to supervised release.

On September 7, 2023, Ms. Luque was sentenced in the Western District of Missouri to an aggregated term of imprisonment of 17 months followed by a total three-year term of supervised release after pleading guilty to wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349. *See United States v. Luque*, 2:20-cr-04071 (W.D. Mo. Sept. 15, 2023) (Doc. 780.) Ms. Luque is serving her term of imprisonment at the Federal Correctional Institution in Waseca, Minnesota ("FCI-Waseca"). (Doc. 1.)

Ms. Luque contends that she has been in federal custody since May 24, 2023, and that her recidivism risk level has been "minimum" since then. Thus, according to Ms. Luque, she should be eligible to earn FSA time credits starting from May 24, 2023, and the BOP should be applying FSA time credits towards her sentence at a rate of 15 days for every 30 days she is participating in evidence-based recidivism reduction ("EBRR") programming or productive activities ("PA"). She asserts that when she was sentenced on September 7, 2023, she received 108 days of jail credit, meaning that by the time she arrived at FCI-Waseca on October 13, 2023, she had been in custody for 136 days and had

---

[1] Ms. Luque's habeas petition is not brought pursuant to 28 U.S.C. § 2254. Nevertheless, the Rules Governing Section 2254 Cases may be applied to her petition. *See* Rule 1(b).

2

received 76 days of good time credit ("GTC"), leaving about 10 months remaining on her sentence. Ms. Luque further claims that if she received FSA credits at a rate of 15 days for every 30 days of programming since May 24, 2023, she would be closer to her release date and eligible for immediate transfer to prerelease custody, specifically to an RRC. She argues that she would benefit from serving as much of her sentence as allowed by law at an RRC to plan and prepare for supervised release. BOP records show that Ms. Luque is currently scheduled to be released on June 22, 2024. *See* BOP, *Find an Inmate*, https://perma.cc/7D7Q-Q56Z (last accessed Mar. 5, 2024).

Based on her position, Ms. Luque asserts two claims in this habeas action: (1) that her federal sentence "commenced" on May 24, 2023, she has maintained a recidivism risk score of "minimum" since that time, and thus the BOP should award her 15 days of FSA time credits for every 30 days she has participated in qualifying programming; and (2) that because she should be earning 15 days of FSA time credits for every 30 days she has been participating in qualifying programming since May 24, 2023, she is eligible for immediate transfer to an RRC and earlier release on supervised release. Each claim is addressed, in turn, below.

*Claim 1*

Ms. Luque's first claim is based on the assertion that her federal sentence began on May 24, 2023, and that her recidivism risk level has been "minimum" since then. Ms. Luque misapprehends the law.

Under the FSA, federal inmates can earn incentives for participating in qualifying programming. 18 U.S.C. § 3632(a)(6). One such incentive is the ability to earn time credits

3

("FTCs") towards the inmate's supervised release and prerelease custody dates. *Id.* § 3632(d)(4). Specifically, the FSA provides that eligible prisoners "shall earn 10 days of time credits for every 30 days" of successful participation in qualifying programming. *Id.* § 3632(d)(4)(A)(i). But "[a] prisoner determined by the [BOP] to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an *additional* 5 days of time credits for every 30 days of successful participation" in qualifying programming. *Id.* § 3632(d)(4)(A)(ii) (emphasis added).

But a prisoner "may *not* earn time credits . . . for an evidence-based recidivism reduction program that the prisoner successfully completed . . . during official detention prior to the date that the prisoner's sentence commences under section 3585(a)." *Id.* § 3632(d)(4)(B)(ii). "A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a).

Here, Ms. Luque's claim that she should be receiving 15 days for every 30 days she successfully participates in eligible programming, starting from May 24, 2023, fails for at least two reasons. First, Ms. Luque contends that her sentence began on May 24, 2023, ostensibly the date she arrived in federal custody, but this is incorrect. Federal court records show that she was sentenced on September 7, 2023, almost three months later. *See Luque*, 2:20-cr-04071 (Doc. 780). "[A] federal sentence cannot commence prior to the date it is pronounced." *Sisemore v. Outlaw*, 363 F. App'x 424, 424 (8th Cir. 2010) (citing *Coloma v. Holder*, 445 F.3d 1282, 1285 (11th Cir. 2006)). Thus, Ms. Luque was not eligible to

receive FSA time credits for participating in any qualifying programming for the period when she was in federal custody but had not yet been sentenced. 18 U.S.C. § 3632(d)(4)(B). Indeed, Ms. Luque was not eligible to receive FSA time credit for participating in qualifying programming until September 7, 2023, when she was "in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served," *id.* § 3585(a).

Second, under section 3632(d)(4)(A)(ii), prisoners are not eligible to earn 15 days of time credit for every 30 days of successful participation in eligible programming until the prisoner is determined "by the Bureau of Prisons to be at a minimum or low risk of recidivating, who, *over 2 consecutive assessments*, has not increased their risk of recidivism." *Id.* § 3632(d)(4)(A)(ii) (emphasis added). While Ms. Luque's risk level is "minimum" after her initial assessment, *see* (Doc. 1-1), Ms. Luque asserts no facts to suggest that she has been "reassessed" since then and that her risk level remains a "minimum," thereby making her eligible to earn "an additional 5 days of time credits for every 30 days of successful participation" in eligible programming.[2] *See* 18 U.S.C. § 3632(d)(4)(A)(ii). Thus, Ms. Luque's claim that she should be receiving FSA time credits at a rate of 15 days for every 30 days she successfully participates in qualifying programming starting from May 24, 2023, lacks support. *See also Laksonen v. Eischen*,

---

[2] Because "a prisoner who successfully participates in evidence-based recidivism reduction programming or productive activities shall receive periodic risk assessments *not less often than annually*," *id.* § 3632(d)(5), and it appears that Ms. Luque received her initial assessment in November 2023, less than four months ago, *see* (Doc. 1-1), it would not be surprising if she has only had one assessment.

5

No. 22-cv-2868 (KMM/JFD), 2023 WL 3072434, at *1 (D. Minn. Apr. 25, 2023) (concluding that a federal inmate needs to maintain a "low risk determination over two consecutive assessments before becoming eligible to receive the five additional days of FSA time credits" for participating in qualifying programming).

Further, while federal inmates have a liberty interest in good time conduct credits, the application of FSA credits, by contrast, is conditional. Indeed, "[t]he [FSA] statute and accompanying regulations betray no expectation that FTC credits could reasonably be regarded as an entitlement, rather than as a benefit that a prisoner might or might not be able to earn at various times during [his] detention." *Fiorito v. Fikes*, Nos. 22-cv-0749 (PJS/TNL), 22-cv-0759 (PJS/TNL), 22-cv-0797 (PJS/TNL), 2022 WL 16699472, at *6 (D. Minn. Nov. 3, 2022). Accordingly, federal inmates have no constitutionally protected liberty interest in the application of FSA time credits. *Id.* The application of FSA credits, therefore, implicates no constitutional right.

*Claim 2*

This leaves claim 2 in which Ms. Luque contends that if the BOP properly applied her FSA time credits, she would be eligible for supervised release sooner and immediately qualify for transfer to prerelease custody.

**A.   Prerelease Custody**

As a threshold matter, Ms. Luque's request to be immediately transferred to an RRC is not a cognizable habeas claim. In line with Eighth Circuit precedent, courts in this District have routinely considered prerelease custody—namely, placement at an RRC or on home confinement, *see* 18 U.S.C. § 3624(g)(2)—as a *place* of confinement. *See United*

6

*States v. Houck*, 2 F.4th 1082, 1085 (8th Cir. 2021) (discussing home confinement as a place of confinement); *see also Williams v. Birkholz*, No. 20-cv-2190 (ECT/LIB), 2021 WL 4155614, at *6 (D. Minn. July 19, 2021) ("Being transferred to home confinement is not a 'release' for incarceration."), *R. & R. adopted*, 2021 WL 4155013 (D. Minn. Sept. 13, 2021). And the BOP has exclusive authority to determine the placement of prisoners. *See Garcia v. Eischen*, No. 22-cv-0444 (SRN/BRT), 2022 WL 4084185, at *2 (D. Minn. Aug. 16, 2022) (collecting cases); *Williams*, 2021 WL 4155614, at *3 ("[I]t is the BOP—not the courts—who decides whether home detention is appropriate.") (internal citation omitted), *R. & R. adopted*, 2021 WL 4155013 (D. Minn. Sept. 13, 2021). While the Second Chance Act of 2007, Pub. Law No. 110-199, 122 Stat. 657, ("SCA"), increased the maximum permitted RRC designation to twelve months, *Hewitt v. Jett*, No. 9-cv-1676 (RHK/RLE), 2010 WL 1417654, at * 2 (D. Minn. Mar. 15, 2010), *R. & R. adopted*, 2010 WL 1416890 (D. Minn. Apr. 6, 2010), nothing in the SCA or the FSA abrogates the BOP's authority to designate the placement of prisoners. *See, e.g.*, *United States v. Kluge*, No. 17-cr-0061 (DWF), 2020 WL 209287, at *2 (D. Minn. Jan. 14, 2020) (explaining that the FSA did not change the statutory language providing that the BOP makes placement determinations).

Further, Ms. Luque has no constitutional right to be considered for RRC placement. *Khdeer v. Paul*, No. 18-cv-2112 (ECT/BRT), 2018 WL 6919637, at *5 (D. Minn. Nov. 29, 2018) (prisoners do not have a "constitutionally protected liberty interest in serving [their] sentence at a particular institution") (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Moorman v. Thalacker*, 83 F.3d 970, 973 (8th Cir. 1996)), *R. & R. adopted*, 2019 WL

7

79318 (D. Minn. Jan. 2, 2019)); *see also United States v. James*, No. 15-cr-0255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr. 21, 2020) ("[I]t is also well-established that prisoners do not have a constitutional right to placement in a particular facility or place of confinement."). Indeed, Ms. Luque "has no legal right or entitlement to *any* period of RRC placement." *McCarthy v. Fed. Bureau of Prisons*, No. 10-cv-0745 (PJS/SRN), 2010 WL 4320507, at *2 (D. Minn. Sept. 29, 2010) (collecting cases), *R. & R. adopted*, 2010 WL 4312851 (D. Minn. Oct. 22, 2010).

A habeas petitioner may challenge only the fact or duration of her confinement. *Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014); *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam). As explained above, the Eighth Circuit views requests for transfer to an RRC as challenges to a prisoner's *place* of confinement. *See Houck*, 2 F.4th at 1085. Since Ms. Luque's request to be transferred to an RRC does not challenge the fact or duration of that confinement, a writ of habeas corpus is not the proper remedy to obtain the relief she seeks. *Kruger*, 77 F.3d at 1072 ("If the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy."). This claim, therefore, lacks merit. *See Jorgensen v. Birkholz*, No. 20-cv2349 (NEB/DTS), 2021 WL 2935641, at *1 (D. Minn. July 13, 2021) (concluding that court lacks jurisdiction over federal habeas claim requesting transfer to home confinement) (collecting cases).

**B.  Supervised Release**

Finally, the Court understands Ms. Luque to be claiming that she would be eligible for supervised release sooner if the BOP awarded her FSA time credits—at a rate of 15

8

days for every 30 days she participates in qualifying programming—starting from May 24, 2023, the date she entered federal custody. (Doc. 1.)

There are several problems with this claim. As noted above, it is premised—incorrectly—on the assertion that Ms. Luque began earning FSA time credits when she entered federal custody on May 24, 2023, rather than when her sentence commenced on September 7, 2023. *See* 18 U.S.C. § 3632(d)(4)(B)(ii). Indeed, Ms. Luque is plainly ineligible to earn FSA time credits from May 24, 2023, the date she entered federal custody, until September 7, 2023, the date her sentence commenced. Further, Ms. Luque's assumption that she should be earning 15 days of FSA time credit for every 30 days she successfully participates in programming is unsupported: there is nothing in the record suggesting that her recidivism risk level has not increased over *two consecutive* assessments. *Id.* § 3632(d)(4)(A)(ii). Indeed, Ms. Luque does not allege that she has *had* two assessments. Finally, to earn FSA time credits, prisoners must "successfully participate" in qualifying programming. *See id.* § 3632(d)(4)(A). Ms. Luque does not allege that she has successfully participated in *any* qualifying programming. (*See* Doc. 1-1 at 2.)

Further complicating matters, Ms. Luque barely began her administrative remedies before initiating this action in federal court. Generally, federal prisoners challenging their sentence must first exhaust their available administrative remedies before seeking federal habeas relief. *See Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009) (concluding that habeas petition must be dismissed because petitioner failed to first exhaust his

9

administrative remedies with the BOP); *United States v. Chappel*, 208 F.3d 1069, 1069 (8th Cir. 2000) (per curiam).

A more developed administrative record would likely clarify the scope of Ms. Luque's claims for the Court and the parties. *See Heil v. Eischen*, No. 23-cv-3845 (JMB/JFD), at *2 (D. Minn. Jan. 9, 2024) (requiring exhaustion promotes efficiency as "claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court") (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)), *R. & R. adopted*, 2024 WL 406603 (D. Minn. Feb. 2, 2024). BOP records reflect that Ms. Luque is currently scheduled to be released on June 22, 2024, less than four months from now. *See* BOP, *Find an Inmate*, *supra*. Ms. Luque alleges that she should be released earlier than that—a cognizable habeas claim. Considering the time constraints at issue here, the Respondents are hereby ordered to Answer Ms. Luque's claim that she is entitled to earlier release on supervised release.

## RECOMMENDATION

Based on the above, and on all of the files, records, and proceedings in this case, **IT IS RECOMMENDED** that:

1. Petitioner Lauren Courtney Luque's claim requesting an order directing the BOP to immediately transfer her to prerelease custody be **DISMISSED WITH PREJUDICE**; and

2. Ms. Luque's claim requesting an order directing the BOP to start calculating her FSA time credits as of May 24, 2023, be **DISMISSED WITH PREJUDICE**.

# ORDER

Further, **IT IS ORDERED** that:

1. Respondents are directed to file answers to Ms. Luque's claim that she is entitled to earlier release on supervised release. The answer shall certify the true cause and proper duration of Petitioner's confinement and show cause why the writ should not be granted in this case.

2. Respondents' answers should include:

    a. Such affidavits and exhibits as are needed to establish the lawfulness and correct duration of Petitioner's incarceration, in light of the issues raised in the petition;

    b. A reasoned memorandum of law and fact fully stating Respondents' legal position on Petitioner's claims; and

    c. Respondents' recommendation on whether an evidentiary hearing should be conducted in this matter.

3. If Petitioner intends to file a reply to Respondents' answers, she must do so within 15 days of the date when the last answer is filed. Thereafter, no further submissions from either party will be permitted, except as authorized by Court order.

Dated: March 5, 2024                  _s/Douglas L. Micko_____
                                      DOUGLAS L. MICKO
                                      United States Magistrate Judge

# NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served with a copy of the objections. *See* Local

Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).